## Bynum v. Bailey.

(Decided July 1, 1924.)

### Appeal from Graves Circuit Court.

1. Covenants—Where Vendee Ousted from Possession Under Prior Mortgage, there was Breach of Covenant of Warranty.—Where vendors under installment contract did not undertake to enforce

their purchase-money lien against land, under precipitating clause in deed and note, until after vendee had been ousted from possession by prior mortgage, there was breach of covenant of warranty, carrying with it of necessity at least nominal damages.

2. Covenants—That Vendee Knew of Existence of Prior Mortgage did Not Preclude Him from Relying Upon Warranty.—Fact that vendee under installment contract knew of prior mortgage at time of purchase did not preclude him from relying upon warranty for damages sustained by eviction on mortgage foreclosure.

3. Estoppel—Vendee Not Estopped by Agreement from Relying on Warranty.—Vendee under installment contract held not estopped from relying on covenant of warranty in action for damages for breach by eviction by mortgagee, by his verbal agreement or oral representations that he would pay purchase price of land purchased and thus enable vendor to take care of mortgages.

4. Covenants—Measure of Damages for Breach.—Damages for breach of covenant of warranty are equal to value of land at time warranty was made, where whole purchase price is paid, and corresponding recovery where only part of purchase price has been paid.

HESTER & HESTER for appellant.

HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

While the land boom was on in 1920, O. W. Bailey and wife sold and conveyed by deed of general warranty to appellant Bynum a tract of about 70 acres of land located in Graves county for the consideration of $9,500.00, $300.00 cash in hand paid, and the balance evidenced by notes, secured by lien on the land, and by three $1,000.00 purchase money notes in which Bynum was payee, and which he assigned to Bailey as collateral. Only a short time before the conveyance of the land by Bailey to Bynum the former mortgaged the entire tract of 153 acres, including the 70 acres which were deeded to Bynum, to the Prudential Insurance Company for $7,000.00, due in ten years from date, with interest payable annually; and about the same time mortgaged the same property to the guaranty Bank and Trust Company of Mayfield for $700.00. Appellant Bynum, the purchaser, knew of the existence of the mortgages at the time he accepted the deed. When the first note of Bynum to Bailey for $3,200.00 became due Bynum failed to pay. As there was a precipitating clause in the deed and notes, Bynum's

entire indebtedness of $9,200.00 with interest became due *instanter* upon the failure to pay the note with interest. Notwithstanding this, the Baileys brought no action against Bynum upon his obligation. Some months thereafter the bank, holding the second mortgage on the Bailey lands, a part of which was conveyed by Bailey to Bynum, instituted an action to foreclose its mortgage against the entire Bailey tract of 153 acres. Appellant Bynum was made a party defendant as was the insurance company and others interested in the land. Appellant made no defense and filed no answer. Judgment was entered directing a sale of the Bailey lands, including that conveyed to Bynum, to satisfy the mortgage debt to the bank. When the sale was carried out the land brought only enough to satisfy the debts of the bank and the insurance company. In other words, the purchaser bid the amount of the bank's debt, interest and cost, and assumed the payment of the mortgage to the insurance company. After the writ of possession had been issued in favor of the purchaser against Bynum, and Bynum ousted from the possession of the land, he brought this action in the Graves circuit court against Manie Bailey individually and as administratrix of C. W. Bailey, deceased, the Bailey heirs and the First National Bank of Mayfield, praying that the notes executed by Bynum to Bailey be canceled and that the three collateral notes executed by Rhodes to Bynum and placed by Bynum with Bailey as collateral security to the Bynum notes, be adjudged the property of Bynum and returned to him. He also prayed the recovery of such money as had been paid on the Rhodes notes to the assignee upon the collateral notes, and for other relief. By amended petitions it was averred that some of the collateral notes had been transferred by the Baileys to certain other persons and banks, and each holder was made defendant. Mrs. Bailey as administratrix of her husband and individually, filed her answer in which she admitted the sale of the land to satisfy the mortgage to the bank. She set forth in detail the history of the indebtedness and litigation and pleaded that Bynum knew of the existence of both of the mortgages on the Bailey land at the time he purchased the 70 acres and accepted the deed with the understanding that the money which he was to pay for the 70 acres was to be used to satisfy the two prior mortgages on the land. The answer also pleaded that the lands had depreciated in value since the sale to Bynum, but the administratrix offered to give

appellant Bynum credit for the amounts he had paid, including the collateral notes for $3,000.00, which were admitted to be worth their face value and convey him a perfect title in the 70 acres purchased, on condition he would carry out his contract by paying the balance of the original purchase price which he agreed to pay Bailey for the lands. Usher, the purchaser of the land at the decretal sale, filed an answer in which he adopted and confirmed the conveyance of the 70 acres to Bynum provided he would pay the balance of the purchase price. A general demurrer was overruled to both answers. By his reply to the answer of the purchaser Usher, appellant Bynum averred he had no knowledge or information on which to found a belief as to whether the defendant Usher "is now the holder and owner of the said two $1,000.00 D. A. Rhoades notes mntioned, or either of them, or whether he became the holder in due course of trade for value before maturity without the knowledge of plaintiff's claim therein."

The reply traversed the averments of the answer and counterclaim of Usher, charging that he and the Baileys had offered to place Bynum *in statu quo,* and charged that after the purchase by Usher and the confirmation of the sale, that Usher offered to sell him the land at the original price. He further denied in the reply that Usher did not authorize the issual of the writ of possession which ousted Bynum from the possession of the land and charged affirmatively that Usher directed the issual of the writ and caused it to be placed in the hands of the sheriff. A general demurrer being filed to those replies by defendants, Mrs. Bailey, administratrix, and Usher, were sustained, the court saying:

> "Then came plaintiff and filed a separate reply to the answer, set-off and counterclaim as amended of Manie Bailey, administratrix of O. W. Bailey, deceased, and also a reply to the answer, set-off and counterclaim of J. R. Usher. Then came defendants and filed a general demurrer to each of said replies. The demurrer coming on to be heard is hereby sustained, to all of which plaintiff objects and excepts.
>
> "The case, by agreement of parties, was thereupon submitted to the court for trial, and the court being advised, doth adjudge that it was the duty of the defendant, Manie Bailey, administratrix of O. W. Bailey, deceased out of the assets in her hands unad-

ministered, to remove the lien on the land sold to the
plaintiff, Bynum, by O. W. Bailey; but, failing to do
so, it was not only the privilege, but the duty of the
plaintiff, out of the money which he owned to the de-
fendant, Manie Bailey, administratrix of O. W.
Bailey, deceased, for the purchase price of said land,
to satisfy and pay off the said lien debts against
said land to the extent, if necessary, of the amount
which he owed for said land; and it appearing to the
court that the plaintiff, Bynum, had assigned to the
decesent, O. W. Bailey, three notes for $1,000.00 each
on G. W. Rhodes as collateral security to secure the
payment of the purchase money notes amounting to
$9,200.00, which the plaintiff owed to the said dece-
dent, O. W. Bailey, and it further appearing to the
satisfaction of the court that the defendant, Manie
Bailey, administratrix, has transferred and assigned
said collateral notes in the sum of $3,000.00 and in-
terest to other and innocent parties, it is therefore
adjudged by the court that said notes were solvent,
and the defendant having disposed of the same, it is
adjudged that the amount of said notes be considered
as payment *pro tanto* of the purchase money notes
owing by the plaintiff, Bynum, to the decedent, O. W.
Bailey, the said amounts, it is adjudged, are credited
on said purchase money notes.

"It further appearing to the court that, in the
action of the Guaranty Bank & Trust Company
against Manie Bailey, administratrix, and the plain-
tiff, Bynum, and others, the land conveyed to the
plaintiff, Bynum, was ordered sold to satisfy a prior
incumbrance created by the mortgage by the said O.
W. Bailey on said land; and it further appearing
that the said Manie Bailey, administratrix, has all of
said purchase money notes in her possession and that
they have not been assigned or transferred to any
innocent party, but still belong to the estate of O. W.
Bailey, deceased, and having offered in her answer
to surrender said notes amounting to the sum of
$6,200.00, it is therefore ordered and adjudged by
the court that the said purchase money notes exe-
cuted by the plaintiff, G. L. Bynum, to the defendant,
O. W. Bailey, for the said land amounting to the sum
of $9,200.00 be delivered up to the plaintiff, Bynum,
and it is adjudged that said notes are fully paid and
satisfied by reason of the breach of warranty of title

on the part of O. W. Bailey and the sale of the plaintiff's land to testify the incumbrance liens existing on the land at the time he purchased it."

As the Baileys did not undertake to enforce their purchase money lien against the land sold to Bynum until after he had been ousted from the possession thereof by a prior mortgage there was a breach of the covenant of warranty and this must of necessity carried with it nominal damages, if not more, depending upon the proof, unless Bynum by his speech and conduct estopped himself to insist upon a recovery as pleaded and claimed by the Baileys, the judgment failing to award damages.

If, as contended by the Baileys, they were led to believe, by the acts and speech of Bynum, that he was going to abandon his purchase and surrender the land because he could not pay for it, and would move off of it and allow the purchaser at the decretal sale to take charge, then on equitable grounds, Bynum should not be allowed to take advantage of the deception practiced by him, if any, and now claim damages for breach of warranty, when if he had made such demands in the first place the Baileys would have prosecuted their claim against Bynum to judgment and saved themselves from liability to Bynum on the warranty of title.

The fact that Bynum knew of the existence of the prior mortgage at the time of the purchase, if it were a fact, did not preclude him from relying upon the warranty for damages sustained by the eviction he suffered. In Cornelius v. Kinnard, 157 Ky. 150, it was held that a grantee may know of the existence of a valid mortgage of the property which he is buying and yet rely upon the warranty of his grantor to protect him against it. Nor is Bynum estopped by his verbal agreement or Bailey's oral representation to the effect that if Bynum would pay the purchase price of the 70 acres of land and thus enable Bailey to take care of the two mortgages Bynum's title would be perfected. This question was considered and decided adversely to the Baileys in the case of Helton v. Asher, 135 Ky. 751, where we said of the deed:

"The writing is the best evidence of the contract between the parties in the absence of fraud or mistake. The rule is thus stated in 11 Cyc. 1066: 'The fact that either or both of the parties knew at the time of the conveyance that the grantor had no title in a part or in the whole of the land does not affect

the right of recovery for a breach of covenant. Knowledge on the part of the purchaser of the existence of an incumbrance on the land will not prevent him from recovering damages on account of it, where he protects himself by proper covenants in his deed, etc.' "

The trial court should therefore have sustained the general demurrer to the affirmative pleas contained in the answers and counterclaims of both the administratrix and the purchaser Usher, except for the estoppel.

Appellant Bynum had in effect paid $3,300.00 of the purchase price of the 70 acres of land, for he had paid $300.00 cash and at the same time put up three notes of $1,000.00 each as collateral, which three notes the Baileys converted to their own use by transferring them to innocent purchasers for value before due. Had Bynum paid $3,300.00 actual cash at the time of the purchase, which is in effect the thing he did, and had defaulted in the payment of a note, no one would have questioned his right to recover damages for the breach of the covenant of warranty, which recovery, according to our cases, would be equal to the value of the land at the time the warranty was made, where the whole purchase price is paid, and a corresponding recovery where only part of the purchase price has been paid. Cox's Heirs v. Strode, 2 Bibb 276; Booker's Admr. v. Bell's Exor., 3 Bibb 176; Wilson v. McGowand, 192 Ky. 565.

While this action was brought in equity, it was one at common law in so far as the recovery for breach of warrant is concerned.

Judgment reversed for proceedings consistent with this opinion.